IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

BETTY TINSLEY,

          Plaintiff,

v.                                    CIVIL ACTION NO.   3:13-23241

ONEWEST BANK, FSB, D.B.A
FINANCIAL FREEDOM,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is Plaintiff's Motion to Amend Complaint [for the Third Time], ECF No. 34, and Plaintiff's Amended Motion to Amend Complaint [for the Third Time], ECF No. 42. For the reasons explained below, the first Motion, ECF No. 34, is **GRANTED in part** and **DENIED in part**, and the second Motion, ECF No. 42, is **DENIED**.

The Court **DIRECTS** Plaintiff to file a newly drafted Third Amended Complaint within **14 days** of the entry of this Memorandum Opinion and Order which *solely* amends the Second Amended Complaint to include the proposed amendments to that Complaint which allege violations under West Virginia Code §§ 46A-2-125(d) and 46A-2-128(e).[1] The Court expressly **DIRECTS** that *absolutely none* of the other amendments in the proposed Amended Third Amended Complaint, ECF No. 42-1,[2]—including changed exhibit numbers, additional references

---

[1] The specific paragraphs in the proposed Amended Third Amended Complaint, ECF No. 42-1, which meet this requirement are second paragraphs 23(a)(i)-(vii), 23(b)(i)-(vi), and 43(c) (in the "Demand for Relief" section). (The proposed Amended Third Amended Complaint begins renumbering at paragraph 1 again under Count I.)

[2] Since Plaintiff filed different versions of her proposed "Third Amended Complaint" with her original instant Motion and with the amended instant Motion but named each version the same, all citations to the most recent proposed Third Amended Complaint, ECF No. 42-1, are labeled herein as citations to the "proposed Amended Third Amended Complaint."

to exhibits, notations of which claims have been dismissed, and additional facts and legal theories—are to be included in this newly drafted Third Amended Complaint.

## I. Background

On August 16, 2013, Plaintiff filed the instant action in the Circuit Court of Putnam County, West Virginia. *See* Compl., ECF No. 1-1 at 13-23. On September 19, 2013, Defendant removed the case to this Court, and on October 9, 2013, Plaintiff filed a Second Amended Complaint,[3] seeking compensatory damages, statutory damages, punitive damages, attorneys' fees, and court costs and alleging breach of contract, fraud, intentional misrepresentation, violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), intentional infliction of emotional distress, negligence, and reckless or negligent misrepresentation, in connection with a reverse mortgage entered into by Plaintiff and Defendant's predecessor. *See* Notice Removal, ECF No. 1; 2nd Am. Compl. at 7-13, ECF No. 8.

In the Second Amended Complaint, Count I alleged breaches of contract by Defendant for 1) force-placing insurance in excess of what was required under the Deed of Trust and charging the cost of such insurance to Plaintiff, and 2) charging Plaintiff a monthly $30 servicing fee which was not clearly disclosed to her. 2nd Am. Compl. at 7-8. Count II alleged fraud and intentional misrepresentation by Defendant for 1) demanding that Plaintiff obtain excessive additional flood insurance and force-placing such insurance, 2) informing Plaintiff that her flood insurance was inadequate and that she had an obligation to carry flood insurance in excess of the loan balance, 3) failing to adequately explain the monthly $30 servicing fee to Plaintiff, and 4) threatening to foreclose on Plaintiff's property for a vague "property charge" of $1,369.70. *Id.* at 8-9. Count III alleged violations of the WVCCPA by Defendant for 1) misleading Plaintiff in multiple letters by

---

[3] A First Amended Complaint was filed in this case before it was removed to this Court. *See* 1st Am. Compl., ECF No. 1-1 at 2-12.

-2-

stating that her flood insurance was inadequate, 2) implying to Plaintiff that she was required under company regulations and federal law to purchase additional flood insurance, 3) failing to adequately disclose to Plaintiff the reasoning for and amount of the monthly servicing fee and how it would be charged to her account, 4) twice threatening to foreclose on Plaintiff's property if she did not pay the "property charge" of $1,369.70, 5) charging Plaintiff for flood insurance which was of no practical value to her, 6) requiring flood insurance which was not reasonably related to the existing hazard or risk of loss or to the terms of credit provided to Plaintiff by Defendant, and 7) not allowing Plaintiff to choose her flood insurance provider. *Id.* at 9-11. Count IV alleged intentional infliction of emotional distress by Defendant for 1) misleading Plaintiff regarding the amount of flood insurance she needed, 2) force-placing excessive flood insurance on Plaintiff's residence, costing her thousands of dollars in equity, 3) implying that federal law required Defendant to force-place such excessive insurance, and 4) twice threatening to foreclose on Plaintiff's property if she did not pay the vague "property charge" of $1,369.70. *Id.* at 11-12. Finally, Count V alleged negligence or reckless or negligent misrepresentation by Defendant for 1) failing to train, supervise, monitor, or otherwise control its employees a) to ensure that they did not violate the WVCCPA and b) to ensure that their flood insurance policies were in compliance with the terms of the Deed of Trust and federal law, 2) representing to Plaintiff that she was not in compliance with federal regulations and her contractual agreement with Defendant because of her flood insurance policy, and 3) twice threatening Plaintiff with foreclosure for undefined property charges. *Id.* at 12-13.

Defendant filed a Motion to Dismiss on November 8, 2013. ECF No. 12. In its March 14, 2014, Memorandum Opinion and Order, this Court granted in part Defendant's Motion to Dismiss, ordering that all claims other than three surviving claims be dismissed as preempted under the

Home Owners' Loan Act ("HOLA"), 12 U.S.C. §§ 1461 *et seq.*, and its implementing regulation, 12 C.F.R. § 560.2, or, more generally, for failing to state a claim upon which relief could be granted. *See* ECF No. 32. The three surviving claims are: 1) Plaintiff's breach of contract claim that Defendant required Plaintiff to get flood insurance in excess of what was required under the Deed of Trust, force-placed such insurance, and charged the cost to Plaintiff; and Plaintiff's WVCCPA claims that Defendant violated West Virginia Code §§ 46A-6-104 and -102(L) by 2) implying to Plaintiff that she was required under company regulations and federal law to purchase additional flood insurance and 3) twice threatening to foreclose on Plaintiff's property if she did not pay a "property charge" of $1,369.70. *Id.*

Plaintiff filed the instant Motion to Amend Complaint on March 17, 2014, before the March 20, 2014, deadline to file amended pleadings as dictated in the Scheduling Order which was in effect on that date. ECF No. 15. Next, on May 27, 2014, Plaintiff filed the instant *Amended* Motion to Amend Complaint, before the more recent Scheduling Order's June 2, 2014, deadline to file amended pleadings. ECF No. 41. It is apparent from Plaintiff's arguments in her Amended Motion and its accompanying memorandum that she intends the Amended Motion to merely supplement—not to replace—the original Motion.

Together, the Motions purport to seek to amend the Second Amended Complaint in only the following ways: 1) to add facts, showing reliance, to her already-dismissed fraud "claim"[4]

---

[4] Despite the Court's clear statement in its March 14, 2014, Memorandum Opinion and Order that Plaintiff actually pled *multiple fraud claims* in her Second Amended Complaint, *see* Mem. Op. Order at 7, Plaintiff persists in referring to a conglomerate fraud "cause of action," "count," or "claim" and does not specify which of the four fraud claims identified by the Court in its prior Order she intends to revive by filing her proposed Amended Third Amended Complaint. *See also NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992) ("Identifying legal theories [in the complaint] may assist defendants and the court in seeing how the plaintiff hopes to prevail, but this organization does not track the idea of 'claim for relief' in the federal rules. Putting each legal theory in a separate count is a throwback to code pleading . . . [in which] legal theory and facts together created a 'cause of action.' The [Federal] Rules of Civil Procedure divorced factual from legal aspects of the claim and replaced 'cause of action' with 'claim for relief' to signify the difference. . . . One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate." (emphasis added)). However, based upon the placement of the new factual

with the intent that it be revived, 2) to add a new claim based upon alleged recent "abusive telephone collection practices" by Defendant, 3) to add a new claim based upon the alleged receipt by Defendant of "kickbacks" from the insurance company through which Defendant force-placed insurance on Plaintiff's property, and 4) to add a new count for conversion. In addition to these changes, the proposed Amended Third Amended Complaint which Plaintiff attaches to her Amended Motion to Amend Complaint adds references to 23 exhibits and changes the exhibit number of the single exhibit which was referenced in—but not attached to—the Second Amended Complaint. Am. 3d Am. Compl. ¶¶ 10, 32-33 & 2nd ¶¶ 9(a), (c)-(d) & (g), 12, 23(a)(i), 23(b)(i).[5] Plaintiff does not remove the numerous claims dismissed by this Court in its March 14, 2014, Memorandum Opinion and Order from her proposed Amended Third Amended Complaint; instead, she peppers the new complaint with notations stating that certain claims were dismissed pursuant to that Order. *See id.* at 18-19 & 2nd ¶¶ 10(a), 19, 19(c)(i), 20(a), 21(a), 22(a), 43(e) & (g). However, Plaintiff fails to mark several of the dismissed claims as dismissed. *See id.* 2nd ¶¶ 4, 7, 11, 19(a)-(b). In all, paragraphs 32-33 and second paragraphs 9, 19, 43(e), and 43(g) in the proposed Amended Third Amended Complaint are altered from their original form in the Second Amended Complaint; additionally, the proposed Amended Third Amended Complaint adds paragraphs 10-11 and second paragraphs 9(a)-(l), 10(a), 12-16, 19, 19(c)(i), 19(e), 20(a), 21(a), 22(a), 23, 35-43, and 43(c) & (h).

Defendant timely filed its Response in Opposition to the original Motion, ECF No. 39, and Plaintiff timely filed a largely unresponsive Reply, ECF No. 40. In response to the Amended Motion, Defendant timely filed another Response, ECF No. 49, which was almost word-for-word

---

content within the fraud section of the proposed Amended Third Amended Complaint attached to Plaintiff's Amended Motion, it is apparent that Plaintiff is attempting to revive only the claim which alleges fraud by Defendant in informing Plaintiff that her flood insurance was inadequate and that she had an obligation to carry flood insurance in excess of the loan balance. *See* Am. 3d Am. Compl. 2nd ¶ 9, ECF No. 42-1.

[5] The proposed Amended Third Amended Complaint begins renumbering at paragraph 1 again under Count I.

the same Response it filed to the original Motion. Plaintiff's Reply to this Response was likewise almost entirely a duplication of her prior Reply. *See* ECF No. 50. These Motions are ripe for resolution.

## II. Legal Standard

Federal Rule of Civil Procedure 15(a)(2) provides that, after the time for amendment as a matter of course has passed, leave of court must be obtained to amend a pleading. The rule specifies that a court should "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The law is well settled that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (emphasis omitted) (internal quotation marks omitted). An amendment is futile if it would fail to survive a motion to dismiss. *See Perkins v. United States*, 55 F.3d 910, 916-17 (4th Cir. 1995).

When considering a motion to dismiss, 1) a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then 2) "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

For the first step, the complaint must provide the plaintiff's "grounds of . . . entitlement to relief" in more factual detail than mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

For the second step, a court must take the factual allegations in the complaint as true, and the complaint must be viewed in the light most favorable to the plaintiff. *See Twombly*, 550 U.S. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570 (internal quotation marks omitted). Plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

### III. Analysis

The Court will now analyze, in turn, each of the four changes which Plaintiff directly requests to add to the Second Amended Complaint through the filing of her proposed Amended Third Amended Complaint.

**a.     Adding factual support to the previously-dismissed fraud claim**

As explained earlier, Plaintiff's first reason for requesting to amend the complaint for a third time is to add factual support—by showing her justifiable reliance upon Defendant's alleged misrepresentations—to her already-dismissed claim that Defendant committed fraud by informing Plaintiff that her flood insurance was inadequate and that she had an obligation to carry flood insurance in excess of the loan balance.

In its March 14, 2014, Memorandum Opinion and Order, this Court noted that it was unable to find any assertion of reliance by Plaintiff upon any representation made by Defendant in support of Plaintiff's two *other* fraud claims—*not* the claim in support of which Plaintiff here requests to add facts showing reliance. *See* Mem. Op. Order at 33, Mar. 14. 2014. More

importantly, in that same Order, the Court explicitly stated that all three fraud claims were "simply breach of contract claims masquerading as fraud claims" and, thus, had to be dismissed under the "gist of the action" doctrine. *Id.* at 33-34. Given that the reason for the dismissal of this fraud claim remains entirely intact even if Plaintiff's proposed Amended Third Amended Complaint is filed, Plaintiff's requested amendments to the Second Amended Complaint to add factual support to this claim are, by definition, futile.

In her Reply, Plaintiff circuitously argues that the gist of the action doctrine should not apply to this fraud claim because the impetus for Defendant's informing Plaintiff that her flood insurance was inadequate and that she had an obligation to carry flood insurance in excess of the loan balance was Defendant's desire to receive kickbacks from placing excessive flood insurance on Plaintiff's property. *See* Pl.'s Reply at 3, 6-7. According to Plaintiff, this means that the contract between Plaintiff and Defendant should not be the focus of the Court's inquiry into this fraud claim; instead, the key contract involved in this claim is the kickback contract between Defendant and the insurance company—a contract to which Plaintiff is not a party. *Id.* Thus, the success of Plaintiff's fraud claim does not depend upon the success of Plaintiff's contract claim. *See id.*

Plaintiff misunderstands the issue. At its heart, this fraud claim requires that Defendant's representations to Plaintiff—that her flood insurance was inadequate and that she had an obligation to carry flood insurance in excess of the loan balance—were false. Plaintiff's contract with Defendant—and *not* Defendant's contract with the flood insurance provider—determines whether these representations were false or not. Thus, Plaintiff's requested amendments to the Second Amended Complaint to add factual support for her already-dismissed fraud claim remain futile despite Plaintiff's argument to the contrary.

> b. **Adding a new claim based upon alleged recent "abusive telephone collection practices" by Defendant**

Plaintiff's second reason for requesting to amend the complaint for a third time is to add a further claim based upon alleged recent "abusive telephone collection practices" by Defendant. In support of this claim, the proposed Amended Third Amended Complaint alleges that, every morning between 8:39 a.m. and 9:56 a.m., from March 5 to March 10, 2014, Defendant called Plaintiff. Am. 3d Am. Compl. 2nd ¶ 23(a)(i), (b)(i). During each call, Plaintiff told Defendant that it needed to call her attorney and provided her attorney's contact information. *Id.* 2nd ¶ 23(a)(iii), (b)(ii). However, Defendant nevertheless asked Plaintiff when she would be making a payment to Defendant and requested Plaintiff's personal information, including her social security number and date of birth, both of which she did not provide. *See id.* 2nd ¶ 23(a)(iv) & (v), (b)(iii) & (iv). Plaintiff avers that, because her loan is a reverse mortgage, no payments to Defendant should be due. *See id.* 2nd ¶ 23(a)(vi), (b)(v). Further, she avers that, due to the pendency of this action, Defendant had clear notice of the contact information of Plaintiff's counsel. *See id.* 2nd ¶ 23(a)(vii), (b)(vi).

Plaintiff seeks to bring this claim under the WVCCPA—specifically, West Virginia Code §§ 46A-2-125(d) and 46A-2-128(e). Section 46A-2-125(d) states:

> No debt collector shall unreasonably oppress or abuse any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section: . . . Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number.

Section 46A-2-128(e) states:

> No debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section: . . . Any communication with a

-9-

consumer whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained, unless the attorney fails to answer correspondence, return phone calls or discuss the obligation in question or unless the attorney consents to direct communication.

Defendant argues that this new claim is futile because 1) the facts alleged in support of Plaintiff's claim fail as a matter of law to qualify as oppressive or abusive, as is required to bring a claim under § 46A-2-125(d), and 2) § 46A-2-128(e) is preempted by HOLA and its implementing regulation.

### 1. West Virginia Code § 46A-2-125(d)

The section of the proposed Amended Third Amended Complaint which alleges a violation under § 46A-2-125(d) specifically states that the unreasonably oppressive or abusive debt collection behavior under this section which Plaintiff alleges Defendant committed by calling her five times, once per morning for five out of six days in a row,[6] is "causing Plaintiffs' [sic] phone to ring or engaging persons, including the Plaintiffs [sic], in telephone conversations repeatedly or continuously or at unusual times or at times known to be inconvenient, with the intent to annoy, abuse or oppress the Plaintiffs [sic]." Am. 3d Am. Compl. 2nd ¶ 23(a).

Defendant argues that the facts alleged in support of Plaintiff's claim fail as a matter of law to qualify as oppressive or abusive, as is required to bring a claim under § 46A-2-125(d); however, the cases Defendant cites in support of this proposition are either decisions upon motions for summary judgment (which place a higher burden on the plaintiff than that required under a motion to dismiss) or otherwise distinguishable from the instant case. *See, e.g.*, *Bourne v. Mapother & Mapother, P.S.C.*, No. CIV.A. 1:12-04086, 2014 WL 555130, at *3-5 (S.D. W. Va. Feb. 12, 2014) (granting summary judgment in favor of the defendant regarding the plaintiff's § 46A-2-125

---

[6] Exhibit 55, ECF No. 42-21, a call log apparently completed by Plaintiff, is referenced within the proposed Amended Third Amended Complaint. Am. 3d Am. Compl. 2nd ¶ 23(a)(i). This log contradicts Plaintiff's allegation that Defendant called her "every morning for five days in a row," *Id.* ¶ 23(a)(ii). In fact, the calls occurred every morning for four days, skipped one day, and then ended with a final morning call on the sixth day. *See id.*

claim); *Dudley v. Powell Law Office, P.C.*, No. C11-5409RBL, 2011 WL 4544632 (W.D. Wash. Sept. 29, 2011) (granting the defendant's motion to dismiss plaintiff's analogous federal Fair Debt Collection Practices Act claim where she had not filed bankruptcy—though she claimed on the phone that she was in the process of doing so—, did not request that the defendant stop calling her, and did not refer the calls to an attorney).

This case is more difficult than most at the motion to dismiss stage in that *so* few calls over such a *short* period of time—with no more than one call per day—are alleged to have occurred. Additionally, the time of the calls, around 8:30 a.m. to 10 a.m., when much of society is either at work, getting ready for work, or at least awake and going about their day, simply does not strike this Court as "unusual" or "inconvenient" in any meaningful way, and it is unclear whether Defendant's representatives had any intent to annoy, abuse or oppress Plaintiff. *See also Bourne*, 2014 WL 555130, at *3 ("The earliest time in the day that [the defendant] called plaintiff's number was 8:19 a.m., and the latest was 10:13 a.m.—hardly unusual times of the day. . . . The volume and nature of these communications[, twenty-seven phone calls over the course of eight months,] do not evince an intent to annoy, abuse, oppress or threaten.") No more than one call occurred per day, and despite the detailed call log exhibit attached to and incorporated into the proposed Amended Third Amended Complaint, there is no alleged abusive language by the representative(s) who called Plaintiff. *See* ECF No. 42-21. In fact, it is clear from the limited facts alleged by Plaintiff that Defendant stopped calling Plaintiff after the sixth day, on which, according to the call log, the representative who called Plaintiff asked *her* to not call him names. *See id.* However, the call log also reveals that, from the very first call, Plaintiff informed Defendant's representative that she had an attorney to which the representative should be speaking and, as early as the third call, Plaintiff asked the representative to stop calling. *See id.* Viewing the allegations in the proposed

Amended Third Amended Complaint in the light most favorable to Plaintiff, Plaintiff alleges enough facts to state a claim to relief that is plausible on its face. Thus, the proposed amendments to the Second Amended Complaint which allege a violation under § 46A-2-125(d) are not futile. Further, such amendments are not prejudicial to Defendant, and there is no indication of bad faith on the part of Plaintiff in requesting these amendments. Accordingly, the Court gives leave to Plaintiff to amend the Second Amended Complaint as proposed to allege a violation under § 46A-2-125(d).

### 2. West Virginia Code § 46A-2-128(e)

Defendant argues that Plaintiff's attempted use here of § 46A-2-128(e)—which mandates that no debt collector may use unfair or unconscionable means to attempt to collect any claim, including by communicating with a consumer when it appears that the consumer is represented by an attorney and the attorney's name and address are known or could be easily ascertained—is preempted by HOLA and its implementing regulation.

HOLA granted the Office of Thrift Supervision ("OTS") the authority to regulate federal savings associations,[7] and though HOLA does not define its own preemptive effect, the

---

[7] Defendant asserts that, although it converted from a federal savings association to a national bank in the past few months, HOLA still applies to Plaintiff's new claims because non-federal savings associations are entitled to HOLA preemption when the contract at issue was originated by a federal savings association, even when the claims arise due to post-origination conduct by said non-federal savings association. *See* Def.'s Am. Resp. at 11 n.3, ECF No. 49; *see, e.g.*, *Parmer v. Wachovia*, No. C 11-0672 PJH, 2011 WL 1807218, at *1 (N.D. Cal. Apr. 22, 2011) (finding a national bank successor to a federal savings association "subject to HOLA with respect to the origination and ownership of [the] loan [originated by the federal savings association]" and finding "any claims asserted by [the] plaintiff related to the origination of his underlying loan, the disclosures made in connection therewith, or the servicing or processing of the loan or its sale to a subsequent purchaser" preempted under HOLA). *But see Gerber v. Wells Fargo Bank, N.A.*, No. CV 11-01083-PHX-NVW, 2012 WL 413997, at *4 (D. Ariz. Feb. 9, 2012) (refusing to follow cases such as *Parmer* because they "cite either (a) nothing, (b) each other, or (c) generic statements of law about corporations succeeding to the rights of the entities they acquire" and holding that a successor to a federal savings association does not benefit from HOLA preemption). *See also Rhue v. Wells Fargo Home Mortgage, Inc.*, No. CV 12-05394 DMG VBKX, 2012 WL 8303189, at *2-3 (C.D. Cal. Nov. 27, 2012) (criticizing *Gerber* and holding that a successor to a federal savings association benefits from HOLA preemption regarding claims which arose pre-succession). In her Reply, Plaintiff ignores this issue. Additionally, according to Defendant, the March 2014 calls pre-dated Defendant's conversion into a national bank. Def.'s Am. Resp. at 11 n.3. In light of Plaintiff's apparent non-opposition on this point and agreeing with *Rhue* and other like cases, the Court will apply the HOLA preemption analysis to Plaintiff's new claims, since the alleged underlying actions of Defendant for each claim all occurred prior to Defendant's

implementing regulation promulgated by OTS states that the agency "occupies the entire field of lending regulation for federal savings associations." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 554 (4th Cir. 2013); 12 C.F.R. § 560.2(a). Importantly, "a federal regulation has the same preemptive effect as a federal statute." *McCauley*, 710 F.3d at 554.

The implementing regulation, 12 C.F.R. § 560.2, states that "federal savings associations may extend credit . . . without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section." § 560.2(a). Paragraph (b) of the regulation then specifies that the types of state laws preempted by HOLA include, "without limitation," state laws[8] "purporting to impose requirements regarding":

> (1) Licensing, registration, filings, or reports by creditors;
> (2) The ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements;
> (3) Loan-to-value ratios;
> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;
> (6) Escrow accounts, impound accounts, and similar accounts;
> (7) Security property, including leaseholds;
> (8) Access to and use of credit reports;
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;
> (11) Disbursements and repayments;
> (12) Usury and interest rate ceilings to the extent provided in 12 U.S.C. 1735f–7a and part 590 of this chapter and 12 U.S.C. 1463(g) and § 560.110 of this part; and

---

conversion into a national bank.
[8] For the purposes of § 560.2, "'state law' includes any state statute, regulation, ruling, order or judicial decision." 12 C.F.R. § 560.2(a).

> (13) Due-on-sale clauses to the extent provided in 12 U.S.C. 1701j–3 and part 591 of this chapter.

§ 560.2(b). Finally, paragraph (c) states that certain types of state law—including contract and commercial law, real property law, and tort law—"are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section."[9] § 560.2(c). OTS has further clarified that "the purpose of paragraph (c) is to preserve the traditional infrastructure of basic state laws that undergird commercial transactions, not to open the door to state regulation of lending by federal savings associations." Lending & Investment, 61 Fed. Reg. 50951–01, 50966 (Sept. 30, 1996).

OTS has also specified the analysis a court should undergo to determine whether preemption applies:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

*Id.* at 50966-67. The Fourth Circuit has clarified that, "[i]n considering § 560.2(b), . . . [a court] must look to all the acts alleged in the complaint. . . . [This] requires an examination of each component of [a] claim to determine if it purports to regulate those aspects of loans enumerated in § 560.2(b)." *McCauley*, 710 F.3d at 556 (citation omitted) (internal quotation marks omitted).

---

[9] Paragraph (a) states the following purposes: "to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States," "[t]o enhance safety and soundness and to enable federal savings associations to conduct their operations . . . by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden," "to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation," and "to further other purposes of [] HOLA." 12 C.F.R. § 560.2(a).

Section 46A-2-128(e) would prevent a federal savings association from initiating "[a]ny communication with a consumer whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained." Defendant argues that Plaintiff's proposed amendment to the Second Amended Complaint to add a further claim under § 46A-2-128(e) based upon five calls from Defendant's representative, once per morning for five out of six days in a row—despite Plaintiff's *repeated* statements that Defendant should call her attorney and not her—implicates the servicing of mortgages under § 560.2(b)(10) and is therefore preempted by HOLA. This Court disagrees.

The law out of which this claim arises is not one of the types of law listed under § 560.2(b); instead, it falls within the confines of "contract and commercial law" under § 560.2(c). In arriving at this conclusion, the Court agrees with the reasoning outlined in *Lenhart v. EverBank*, No. 2:12-CV-4184, 2013 WL 5745602, at *9 (S.D. W. Va. Oct. 23, 2013):

> In alleging a violation of section 46A–2–128(e), plaintiffs are not challenging the right to service the loan generally or even [the bank's] right to make contact concerning the debt. Section 46A–2–128(e) merely directs to whom such a communication should be made—a lawyer—when the plaintiff is represented by counsel. This tailored consumer-protection effort by the Legislature was designed to avoid a skilled and deceptive collector from accomplishing an end-run around counsel to the client's potentially severe detriment.
>
> The Legislature appears to have concluded that a debt collector contacting a debtor it knows to be represented by counsel often constitutes more than just a simple servicing device. It could represent an affirmative, and deceptive, effort to collect from a consumer in a manner that his lawyer would know to be unlawful under federal or non-preempted state law. Seen in this light, the narrowly drawn section 46A–2–128(e) is properly understood as a state law prohibiting deceptive acts and practices in the course of commerce which . . . [is] not included within section 560.2(b). *See also McCauley,* 710 F.3d at 555 ("When interpreting HOLA and its implementing regulation, . . . we are cautioned that they are not intended to 'preempt state laws that establish the basic norms that undergird commercial transactions.' OTS Op. Letter, Preemption of State Laws Applicable to Credit Card Transactions, 1996 WL 767462, at *5 (Dec. 24, 1996)."); *id.* at 556 (noting that "state laws establishing a basic framework for commerce" include "laws prohibiting deceptive practices.").

*See also* OTS Op. Letter, Preemption of State Laws Applicable to Credit Card Transactions, 1996 WL 767462, at *5 (Dec. 24, 1996) ("State laws prohibiting deceptive acts and practices in the course of commerce are not included in the illustrative list of preempted laws in § 560.2(b)."). Though a commercial law claim such as this affects the lending operations of federal savings associations, it does so only incidentally, and the bringing of such a claim under state law remains consistent with the purposes of § 560.2(a). *See also Lenhart*, 2013 WL 5745602, at *9. Thus, Plaintiff's new claim under § 46A-2-128(e) based upon alleged recent "abusive telephone collection practices" by Defendant is not preempted under HOLA.

Therefore, the proposed amendments to the Second Amended Complaint which allege a violation under § 46A-2-128(e) are not futile. Further, such amendments, are not prejudicial to Defendant, and there is no indication of bad faith on the part of Plaintiff in requesting these amendments. Accordingly, the Court gives leave to Plaintiff to amend the Second Amended Complaint as proposed to allege a violation under § 46A-2-128(e).

    **c.    Adding a new claim based upon the alleged receipt by Defendant of "kickbacks" from the insurance company through which Defendant force-placed insurance on Plaintiff's property**

Plaintiff's third reason for requesting to amend the complaint for a third time is to add a claim based upon the alleged receipt by Defendant of "kickbacks" from the insurance company through which Defendant force-placed insurance on Plaintiff's property. In support of this "new claim," the proposed Amended Third Amended Complaint alleges that Defendant force-placed insurance on Plaintiff's home in an excessively high amount in order to obtain kickbacks from the insurance company through which the insurance was issued, that Defendant withheld its relationship with the insurance company from Plaintiff, and that Plaintiff relied to her detriment

upon Defendant's authoritative letters stating that such an excessively high amount of flood insurance was required of her.

At its heart, this "new claim" is actually two claims: 1) that Defendant withheld information from Plaintiff, to her detriment, and 2) that Defendant force-placed excessively high amounts of insurance on Plaintiff's home after authoritatively telling Plaintiff that such was required, upon which authoritative statements Plaintiff relied, to her detriment. The first claim is one of nondisclosure and, as such, is preempted by HOLA under § 560.2(b)(9) as arising out of state law which purports to impose requirements regarding disclosure. Additionally, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," and "in the event of conflict between the bare allegations of the complaint and any exhibit attached [to it] pursuant to Rule 10(c), the exhibit prevails." Fed. R. Civ. P. 10(c); *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) (citation omitted). Plaintiff attaches 24 exhibits to her proposed Amended Third Amended Complaint. The core of Plaintiff's first claim—that Defendant withheld its relationship with the insurance company from Plaintiff—is undermined by Plaintiff's own exhibits. For instance, in a letter from Defendant to Plaintiff—Exhibit 5—, after Defendant explains that it will force-place flood insurance on Plaintiff's property if she does not take certain actions within a set timeframe, Defendant expressly states, "We and/or our affiliates may receive compensation in connection with the insurance policy described in this letter." *See* ECF No. 42-6; *see also* Ex. 8, ECF No. 42-9. This exhibit, incorporated into the proposed Amended Third Amended Complaint, is in direct conflict with Plaintiff's claim. *See* Am. 3d Am. Compl. 2nd ¶¶ 9(c), (d). Thus, even if HOLA preemption did not apply, this claim would fail under a motion to dismiss.

The second claim—that Defendant force-placed excessively high amounts of insurance on Plaintiff's home after authoritatively telling Plaintiff that such was required—was already dismissed by this Court in its March 14, 2014, Memorandum Opinion and Order under the gist of the action doctrine. *See* Mem. Op. Order at 32-24, Mar. 14. 2014 (dismissing Plaintiff's fraud claims that Defendant "1) demanded that Plaintiff obtain excessive additional flood insurance and then force-placed such insurance[ and] 2) informed Plaintiff on multiple occasions that her flood insurance was for an inadequate amount, implying that she had an obligation to carry flood insurance in excess of the loan balance—which assertions Plaintiff relied upon to her detriment"). Rewording a claim does not make it a new claim. Adding the alleged motive behind a claim—here, in order to receive kickbacks from the insurance company—does not make it a new claim. Thus, Plaintiff's requested amendments to the Second Amended Complaint to add a "new claim" based upon the alleged receipt by Defendant of "kickbacks" from the insurance company through which Defendant force-placed insurance on Plaintiff's property are futile.

### d. Adding a new count for conversion

Plaintiff's fourth reason for requesting to amend the complaint for a third time is to add a new count for conversion. In support of this new legal theory, the proposed Amended Third Amended Complaint alleges that, without Plaintiff's permission, Defendant converted Plaintiff's equity in her home by force-placing excessive amounts of flood insurance on her home and charging the premiums to her equity. *See* Am. 3d Am. Compl. ¶¶ 36-40. Plaintiff further alleges that these charges prevented her from accessing her equity, thus she had to dip into her own finances to pay for flood insurance. *See id.* ¶¶ 39, 41. Additionally, the premiums charged to Plaintiff's equity resulted in the loan on the home becoming overdrawn, and as a result, Defendant began threatening foreclosure. *See id.* ¶¶ 42-43.

This proposed amendment would clearly fail under a motion to dismiss pursuant to the gist of the action doctrine. As already explained in this Court's prior Memorandum Opinion and Order and as the West Virginia Supreme Court of Appeals recently clarified,

> In seeking to prevent the recasting of a contract claim as a tort claim, courts often apply the "gist of the action" doctrine. Under this doctrine, recovery in tort will be barred when *any* of the following factors is demonstrated:
>
> > (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

*Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568, 577 (W. Va. 2013) (emphasis added).

"[C]onversion . . . is essentially the exercise of dominion over the personal property of another by a person who has *no legal right to do so*." *Rodgers v. Rodgers*, 399 S.E.2d 664, 677 (W. Va. 1990) (emphasis added). As with the fraud claims dismissed pursuant to this Court's prior Memorandum Opinion and Order, if Defendant prevails on Plaintiff's contract claim, then this new conversion count must necessarily fail as well because Defendant would have had a legal right—under its Home Equity Conversion Loan Agreement with Plaintiff—to assess the flood insurance premiums against Plaintiff's equity in her home. Thus, factor four of the gist of the action doctrine would bar this claim. Accordingly, Plaintiff's requested amendments to the Second Amended Complaint to add a new count for conversion are futile.

### IV. Conclusion

For the reasons explained above, Plaintiff's Motion to Amend Complaint [for the Third Time], ECF No. 34, is **GRANTED in part** and **DENIED in part**, and Plaintiff's Amended Motion to Amend Complaint [for the Third Time], ECF No. 42, is **DENIED**.

The Court **DIRECTS** Plaintiff to file a newly drafted Third Amended Complaint within **14 days** of the entry of this Memorandum Opinion and Order which *solely* amends the Second Amended Complaint to include the proposed amendments to that Complaint which allege violations under West Virginia Code §§ 46A-2-125(d) and 46A-2-128(e).[10] The Court expressly **DIRECTS** that *absolutely none* of the other amendments in the proposed Amended Third Amended Complaint, ECF No. 42-1,—including changed exhibit numbers, additional references to exhibits, notations of which claims have been dismissed, and additional facts and legal theories—are to be included in this newly drafted Third Amended Complaint.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: July 24, 2014

_____
ROBERT C. CHAMBERS, CHIEF JUDGE

---

[10] The specific paragraphs in the proposed Amended Third Amended Complaint, ECF No. 42-1, which meet this requirement are second paragraphs 23(a)(i)-(vii), 23(b)(i)-(vi), and 43(c) (in the "Demand for Relief" section).